UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

15JF
#3
Related to 3:20-cv-S'
FILED

JUL 30 2020

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

RAFIQ SABIR #55312-066
Federal Correctional Institution, Loretto
Post Office Box 1000
Cresson, Pennsylvania 16630

RAFIQ SABIR, PETITIONER

v

WARDEN FCI LORETTO, RESPONDENT

Case No. 3:20-CV-152

28 USC §2241 FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

---

PETITIONER IS CHALLENGING GUILTY VERDICT OF DISCIPLINARY HEARING OFFICER AGAINST PETITIONER FOR VIOLATING PRISON RULE 108 POSSESSION OF A CELL PHONE AND CONSEQUENT LOSS OF 41 DAYS GOOD TIME CREDIT

## I OVERVIEW

1. On 7 August 2019 PETITIONER was found guilty of violating Prison Rule 108 by Disciplinary Hearing Officer Gonzalez at Metropolitan Detention Center in Brooklyn (MDC/Bklyn) by possessing a cell phone. Exhibit A

2. PETITIONER filed a timely appeal with the Northeast Regional Director of the Federal Bureau of Prisons (FBOP), who reversed and remanded back to MDC/Bklyn to either retry the case or to drop the charge. Exhibit I and J

3. After the decision by the Northeast Regional Director PETITIONER continued to suffer from sanctions, and so PETITIONER filed a new appeal with the Northeast Regional Director to expunge the charge, remove the sanctions, and restore lost good time credit, the identical requests made in the original appeal. Exhibit K and L

4. The Northeast Regional Director refused to expunge PETITIONER's record and to restore good time, so Petitioner appealed to Central Office of FBOP, and the National Director likewise refused to grant relief requested. Exhibit M and N

1

## II BACKGROUND

5. PETITIONER was arrested 28 May 2005 and found guilty May 2007 in Southern District of New York of violating 18 USC § 2339 B by conspiring to and attempting to provide material support to a Foreign Terrorist Organization. In November 2007 PETITIONER was sentenced to 300 months incarceration.

6. PETITIONER was held in MDC/Bklyn from 10 July 2019 to 3 September 2019 while enroute in transfer from Federal Correctional Institution in Danbury (FCI Danbury) to FCI Loretto.

7. On 28 July 2019 around 13:30 a group of corrections officers entered housing unit J-73 where PETITIONER was housed in MDC/Bklyn, and announced a search by shouting, "Everybody get on the floor!"

8. PETITIONER was near the entrance to the housing unit at the corrections officer's office on the lower tier at that moment because he had been summoned there to pick up legal mail. PETITIONER'S cell was on the upper tier.

9. A corrections officer entered PETITIONER'S cell and found a cell phone on the floor. Both PETITIONER and his cell mate Naji Mahammad were moved to Segregated Housing Unit (SHU) and charged with possession of the same cell phone. Exhibit F

10. Because PETITIONER was in SHU he did not have ability to locate witnesses; so PETITIONER wrote his own sworn statements as evidence that he did not possess a cell phone, among other things, which he submitted to Disciplinary Hearing Officer Gonzalez at DHO hearing on 31 July 2019. After the guilty verdict at the second DHO hearing on 7 August 2019 PETITIONER asked his cellmate from J-73 Naji Muhammad to endorse written sworn statements for appeal. Exhibit B

11. After PETITIONER arrived at FCI Loretto he saw inmate Michael Tyler there, who also was housed in J-73 in MDC/Bklyn at the time of the raid. He told PETITIONER that he saw a member of the Blood gang toss the cell phone into PETITIONER'S cell during the raid. He then provided PETITIONER with written sworn statements testifying to that. Exhibit D

12. Another inmate Wheeler, who also was on unit J-73 at MDC/Bklyn during the raid, arrived at FCI Loretto. He told PETITIONER that inmate Mills, a member of the Blood gang admitted to him that he threw the cellphone

2

into PETITIONER's cell on the day of the raid. PETITIONER was not able to get written sworn statements from inmate Wheeler before he was transferred.

13. On 31 July 2019 PETITIONER had DHO hearing where he presented his own written sworn statements as evidence, which DHO Gonzalez read aloud at the hearing line-by-line. On the basis of those written sworn statements, DHO Gonzalez said he would "expunge, or at least suspend" the incident report, and that PETITIONER would know which one that evening. No one came to PETITIONER that evening. Exhibit C and E

14. One week later, on 7 August 2019, PETITIONER was brought back for a second DHO hearing without notification to PETITIONER until one hour prior to it, to be retried for the same offense. Exhibit C

15. The primary evidence used by DHO Gonzalez against PETITIONER was a "Post it Note" attached to the cell phone with PETITIONER's name and number and his cell mate from J-73 name and number written on it. Exhibit C

16. Gonzalez stated, "I can't believe you would put your own name and number on the cell phone". But he could not explain how PETITIONER could have gotten a "Post it Note", or whose handwriting was on it. Gonzalez did not even mention a "Post it Note" at the first hearing. Exhibit C

17. In DHO report DHO Gonzalez did not even mention the "Post it Note"; instead, he claimed there was "secret evidence" that he admitted in the report he never informed PETITIONER about it. If there was "secret evidence", then PETITIONER was entitled to know the substance of it at least during the hearing so that he could defend himself from it. To date, PETITIONER has not been informed of the substance of this "secret evidence". Exhibit A

18. In his report DHO Gonzalez claimed PETITIONER did not want a staff representative, as is his right by FBOP policy, despite form filed by Counselor Bennett documenting that PETITIONER specifically named who he wanted as staff representative. Exhibit A and G

19. In his report DHO Gonzalez claimed PETITIONER made no statement other than denying that he had a cellphone. Gonzalez failed to mention PETITIONER's written sworn statements given to Gonzalez a week earlier. Exhibit A and G

3

20. On appeal PETITIONER argued he did not get a fair and impartial hearing; the second hearing at which DHO Gonzalez found PETITIONER guilty was not permissible because of double jeopardy; it violated PETITIONER'S rights because by policy he was entitled to at least 24 hours notice, which was not given; PETITIONER was denied his right to have a staff representative, which he specifically requested; DHO Gonzalez lied in his report when he claimed PETITIONER did not request a staff representative; DHO Gonzalez lied in his report when he said PETITIONER merely denied having a cell phone, and he intentionally omitted PETITIONER'S written sworn statements given to DHO Gonzalez at the first DHO hearing; DHO Gonzalez violated PETITIONER'S right to know the substance of alleged "secret evidence", and he never even advised PETITIONER that alleged "secret evidence" existed; DHO Gonzalez told PETITIONER at second hearing that the "Postit Note" attached to the cell phone was the evidence that led to the guilty verdict, and then he did not even mention it in his report after PETITIONER made a strong irrefutable argument at the hearing that made the "Postit Note" incompetent as evidence and made the cell phone inadmissible as evidence; DHO Gonzalez concealed the fact that PETITIONER'S written sworn statements at the first hearing caused him to tell PETITIONER the incident report would either be "expunged, or at least suspended"; the second hearing was unnecessary and unreasonable because a week earlier DHO Gonzalez had already found PETITIONER'S cellmate from J-73 Naji Mahammad guilty of possessing the same cell phone. Exhibit I

21. On appeal PETITIONER provided to Northeast Regional Director the original written sworn statements given to DHO Gonzalez at the first hearing, as well as a new set of written sworn statements describing the two hearings and the conflicting conclusions reached by DHO Gonzalez at those hearings. Exhibit C

22. On appeal PETITIONER provided to Northeast Regional Director written sworn statements of his cellmate on J-73 Naji Muhammad stating that he had been found guilty of possessing the same cell phone a week before PETITIONER'S second DHO hearing; that PETITIONER did not possess a cell phone; and that the handwriting on the "Postit Note" was not his handwriting. Exhibit B

4

23. On appeal PETITIONER provided to Northeast Regional Director the incident report showing the time of the incident, and the time of delivery of the incident report as untimely, facts concealed by DHO Gonzalez in his report, and which PETITIONER raised at the first hearing. There is no explanation in the record for untimely delivery of the incident report, and this was part of the reason DHO Gonzalez said at the first hearing he would "expunge, or at least suspend" the incident report.    Exhibit C and E

24. On appeal PETITIONER provided to Northeast Regional Director the FBOP form completed and signed by Counselor Bennett at MDC/Bklyn documenting that PETITIONER specifically requested a staff representative, contrary to claim of DHO Gonzalez in his report that PETITIONER did not request one. Exhibit G

25. On appeal PETITIONER provided to Northeast Regional Director written sworn statements of Michael Tyler that he witnessed a member of the Blood gang, (later identified as inmate Mills), toss the cell phone into PETITIONER's cell on J-73 on the day of the incident, during the raid. Exhibit D

26. On 6 December 2019 the Northeast Regional Director concluded that "A review ... reveals questions concerning the disciplinary process. Accordingly, this disciplinary action is being remanded for further review and rehearing, if necessary. ... To the extent above, your appeal is partially granted." The Northeast Regional Director invited PETITIONER to appeal again if he so desired.  Exhibit J

27. On 19 January 2020 due to oppressive sanctions on PETITIONER (that have since elapsed) and to loss of good time credit that resulted from the incorrect guilty verdict regarding this incident, PETITIONER filed another appeal. The Northeast Regional Director declined to provide relief, claiming PETITIONER's complaints of sanctions were new; in his original appeal PETITIONER asked for removal of these same sanctions, as well as restoration of lost good time credit. Exhibit K and L

28. On 20 March 2020 PETITIONER appealed to Central Office of FBOP and the National Director also refused to provide relief, concurring with reason of the Northeast Regional Director.   Exhibit M and N

29. As per the foregoing, PETITIONER has exhausted his administrative remedies that were available to him.

## III CLAIMS

30. PETITIONER MAKES THE FOLLOWING CLAIMS:
    A) PETITIONER DID NOT RECEIVE FAIR AND UNBIASED HEARING;
    B) DISCIPLINARY HEARING OFFICER VIOLATED DOUBLE JEOPARDY
    C) NO COMPETENT EVIDENCE AT SECOND DHO HEARING
    D) DHO REPORT HAD CRITICAL OMISSIONS AND FALSE STATEMENTS
    E) DHO CONSPIRED TO DEPRIVE PETITIONER OF HIS LIBERTY
    F) OTHER DUE PROCESS VIOLATIONS

    A) <u>PETITIONER DID NOT RECEIVE FAIR AND UNBIASED HEARING</u>

31. PETITIONER did not receive a fair and unbiased hearing.

32. There were two hearings, the first of which on 31 July 2019 concluded in PETITIONER's favor. Exhibit C

33. At the first hearing PETITIONER submitted to DHO Gonzalez written sworn statements. Exhibit C and E

34. As a result of PETITIONER's written sworn statements DHO Gonzalez concluded that he would "expunge or at least suspend" the incident report. Exhibit C

35. After reaching this conclusion DHO Gonzalez said he had to "check with someone first". By making this statement DHO Gonzalez was substituting the judgment of some anonymous person not assigned the right by FBOP to determine judgment in DHO hearings, and who had not been present at PETITIONER's hearing. This was unfair and a demonstration of bias introduced by an anonymous person. Exhibit C

36. Gonzalez left the hearing and returned in about 5 minutes. Upon his return he said, "He must have gone downstairs. I will let you know by this evening whether it is expunged or suspended." Either way, PETITIONER was not found guilty, and therefore he should have been released from SHU and returned to general population without sanctions. Exhibit C

6

37. That evening no one came to PETITIONER. The next evening inmates were being released from SHU, but corrections officers had no information for PETITIONER on his status. Exhibit C

38. Over the weekend PETITIONER saw his counselor Mr. Bennett, who advised PETITIONER to speak with the associate warden during SHU rounds on Wednesday. Exhibit C

39. On Wednesday 7 August while PETITIONER awaited the associate warden, S.I.S. Lt. Ramos stopped at PETITIONER's cell during SHU rounds and offer his assistance. After PETITIONER explained the situation, Lt. Ramos looked at his roster and said, "You did not have DHO; you are having DHO today." Within an hour PETITIONER was taken from his cell to a second DHO hearing. Exhibit C

B) Disciplinary Hearing Officer Violated Double Jeopardy

40. Disciplinary Hearing Officer Gonzalez violated PETITIONER's right to be free from Double Jeopardy when he held a second hearing on the same charge for which he concluded at the first hearing that the charge would be "expunged, or at least suspended", which amounts to a "not guilty" verdict. Exhibit C

41. The first hearing ended in PETITIONER's favor based on the evidence available at the time. That evidence included the incident report stating that the cell phone was found on the floor of PETITIONER's cell. PETITIONER's sworn statements were submitted at that hearing as evidence, which DHO Gonzalez read aloud at the hearing and commenting aloud on each point. PETITIONER stated the cell phone was not found in his possession. The cell floor is a common area, and does not constitute possession. PETITIONER stated that there are no phone numbers in the call log that could be connected to him. Upon reading this, DHO Gonzalez said, "Let me check something." Then he reviewed some documents in the file and exclaimed, "This was

7

never referred to the FBI! I am definitely going to have to expunge this." In PETITIONER's sworn statements PETITIONER noted that the incident report was not delivered in a timely manner, and DHO Gonzalez agreed. There is no explanation in the record as to why it was not delivered in a timely manner. Due to these facts DHO Gonzalez concluded that he would "expunge, or at least suspend" the incident report. In light of these facts and DHO Gonzalez's conclusion, it was unfair for him to hold a second hearing, violating PETITIONER's right to be free from Double Jeopardy.   Exhibit C and E

42. Also on 31 July, the same day of PETITIONER's first hearing, DHO Gonzalez held a hearing for Naji Muhammad, who was PETITIONER's cell mate on housing unit J-73 when the cell phone was found. Naji Muhammad was found guilty of possessing the cell phone, thus making it completely unnecessary to hold a second hearing for PETITIONER on the allegation that PETITIONER also possessed the same cell phone.   Exhibit C and B

C) THERE WAS NO COMPETENT EVIDENCE PRESENTED AGAINST PETITIONER AT THE SECOND DHO HEARING

43. There was no new competent evidence presented at the second hearing that could not have been known at the first hearing, and that would have warranted a second hearing. The only additional evidence presented at the second hearing, on which DHO Gonzalez determined that PETITIONER was guilty was a "Post it Note" attached to the cell phone with PETITIONER's name and number and his cell mate's name and number written on it. Such a note is quite conspicuous, and therefore could not have been overlooked had it been present at the first hearing. PETITIONER was shown a photograph of the cell phone at the first hearing, and does not recall seeing a "Post it Note" affixed to it. PETITIONER alleges it was added after that hearing, and thereby rendered the

8

cell phone not competent as evidence at the second hearing. Exhibit C

44. At the second hearing DHO Gonzalez showed a photograph of the cell phone with the "Postit Note" attached and said, "I can't believe that you would put your own name and number on the cell phone." PETITIONER noted that inmates do not have access to "Postit Notes"; only prison staff have them. PETITIONER asked DHO Gonzalez, "whose handwriting is that? It is not my handwriting and not my cell mate's handwriting. Whoever's handwriting that is, is the one who put the cell phone in my cell." The "Postit Note" and the handwriting is proof that prison staff altered the evidence in order to wrongfully find PETITIONER guilty of possessing a cell phone, for which his cell mate Naji Muhammad had already been found guilty, at a second illegal hearing against PETITIONER, violating PETITIONER's right to be free from Double Jeopary. Exhibit C

### D) DISCIPLINARY HEARING OFFICER REPORT HAD CRITICAL OMISSIONS AND DEMONSTRABLY FALSE STATEMENTS

45. Disciplinary Hearing Officer Gonzalez's report had critical omissions and numerous demonstrably false statements, which was unfair and biased.

46. It was unfair that the "Postit Note" which DHO Gonzalez used to declare PETITIONER guilty at the second hearing was not even mentioned in his report. PETITIONER's arguments at the second hearing regarding the "Postit Note" certainly made it imprudent for DHO Gonzalez to include it. Tampering with evidence not only renders the evidence incompetent, but it also may be criminal.

47. It was unfair that DHO Gonzalez did not mention the fact that there was an earlier hearing on 31 July. By omitting

9

this fact, DHO Gonzalez intentionally concealed the fact that he violated PETITIONER's right to be free from Double Jeopardy. This shows consciousness of guilt of complicity of DHO Gonzalez. Exhibit C

48. PETITIONER submitted written sworn statements as evidence at the first DHO hearing. It was unfair for DHO Gonzalez to omit mention of PETITIONER's written sworn statements in his report. Then DHO Gonzalez falsely claimed in his report that the only thing PETITIONER said was, "I had no phone". Gonzalez lied in his report when he wrote, "He did not submit any documentary evidence for the DHO to consider." Exhibit A and C

49. It was unfair for DHO Gonzalez to omit from his report the time of the incident, which was 3:00 p.m. This was not a mere oversight, but it was an attempt to conceal the fact that the incident report was not delivered to PETITIONER in a timely manner. Had there been a valid excuse for the untimely delivery, then DHO Gonzalez would have included it in his report, making it part of the record in order to eliminate untimely delivery as a defense for PETITIONER. Exhibit A, C, and F

50. Gonzalez falsely asserted in his report, "Inmate was advised of the rights ... and a copy of the advisement of rights form is attached." No such "advisement of rights form" was attached to DHO report. PETITIONER never signed such a form. Exhibit A and H

51. Gonzalez falsely asserted in his report, "Inmate waived right to staff representative." The form documenting PETITIONER's specific request for staff representative, signed by counselor Bennett, is hereby attached. Exhibit A and G

52. Gonzalez falsely asserted in his report, "The DHO asked if he

10

[PETITIONER] had any issues with the disciplinary process up to this point and he indicated that he did not." This statement was an outright lie; DHO Gonzalez never asked PETITIONER this question, nor anything resembling it. In fact, PETITIONER was outraged by numerous issues in the disciplinary process at the second hearing, including the following:

a) The second hearing violating Double Jeopardy;
b) the appearance of the "Post-it Note" with PETITIONER's name and number in the handwriting of some anonymous third person;
c) the change in Gonzalez temperament from congenial at the first hearing to hostile at the second hearing;
d) the fact that his cell mate on J-73 Naji Muhammad had already been found guilty, yet PETITIONER was still being tried a second time for possession for the same cell phone, in violation of Double Jeopardy;
e) the fact that he was not released from SHU after the first hearing;
f) DHO Gonzalez's virtually immediate pronouncement of guilt from the very start of the second hearing.

When DHO Gonzalez showed PETITIONER the photograph of the cell phone with the "Post-it Note" attached and pronounced PETITIONER guilty, PETITIONER spontaneously exclaimed, "This is a railroad job!" There is no way that any rational person could conclude after this statement that PETITIONER "indicated that he did not" have any issues with the disciplinary process. Exhibit A and C

58. It was unfair that DHO Gonzalez wrote in his report that PETITIONER did not request any witnesses. The fact that PETITIONER's requested staff representative did not show up before or at the first hearing would have been a complaint at that hearing if it had not ended in his favor. If PETITIONER had notice of the second hearing and his requested staff representative had shown up, then PETITIONER would at least have wanted his cell mate from J-73 Naji Muhammad

11

to have been a witness to testify that he had been found guilty a week earlier on 31 July; that PETITIONER did not have a cell phone; and that the handwriting on the "Post it Note" was not his. It would have been a possible violation of Muhammad's Fifth Amendment right to ask him to testify at PETITIONER's first hearing. Once he was found guilty, then Muhammad felt free to testify for PETITIONER. Also PETITIONER would have asked his staff representative to access video from J-73 at the time of the incident, which would have shown who put the cell phone in PETITIONER's cell. In addition, PETITIONER would have asked the staff representative to speak with PETITIONER's associates on J-73 in order to find out if they witnessed anything. In doing so, the staff representative likely would have found inmate Wheeler and inmate Michael Tyler to testify that inmate Mills, a member of the Blood gang, was seen to have and admitting having thrown the cell phone into PETITIONER's cell. Double Jeopardy and lack of notice prevented PETITIONER from calling witnesses at the second hearing. Exhibit A, B, and D

E) DHO GONZALEZ WAS PART OF CRIMINAL CONSPIRACY TO DEPRIVE PETITIONER OF CONSTITUTIONAL RIGHT TO LIBERTY

54. Gonzalez was part of a conspiracy with unknown persons to deprive PETITIONER of his constitutionally guaranteed right to liberty, both in prison and out of prison by contriving to find PETITIONER guilty of possessing cell phone after Gonzalez stated that he would "expunge, or at least suspend" the charge at the first hearing. As a result of this conspiracy, PETITIONER was sentenced to disciplinary segregation time, and then was deprived of 41 days good time credit. Exhibit A and C

55. After the first hearing where DHO Gonzalez stated he would "expunge, or at least suspend" the incident report, he stated that he had to "check with someone;" clearly that anonymous person was a part of the conspiracy - Gonzalez's role is clearly delineated above. Exhibit C

12

56. A third co-conspirator, based on the handwriting on the "Post-it Note," was probably a female.

57. Lieutenant Ramos knew or should have known that PETITIONER had DHO hearing on 31 July. His statement to PETITIONER on 7 August 2019 that he "did not have DHO" yet, and that he was scheduled to go for second hearing that day makes Lt. Ramos complicit in the conspiracy as well. Exhibit C

58. Conspiring to deprive a person of liberty is a crime.

### F) OTHER DUE PROCESS ISSUES

59. There were many other Due Process issues that resulted in PETITIONER being denied a fair and impartial hearing, some of which are listed below.

60. The Federal Bureau of Prisons policy requires at least 24 hour notice before hearings. PETITIONER left first hearing believing he was not found guilty, and did not get notice of the second hearing until less than an hour before it happened. As a result, PETITIONER did not have a chance to prepare. He could have written a supplementary sworn statement, called at least his cellmate from J-73 as a witness, insisted on seeing his requested staff representative and gotten a postponement in order to prepare. PETITIONER could have learned from his staff representative about the "Post-it Note", what happened with his first set of written sworn statements, video surveillance on J-73, and other potential witnesses. Exhibit C

61. The DHO report cites "secret evidence", but DHO Gonzalez says he never informed PETITIONER about it. Case law says a defendant must be informed of the substance of secret evidence. PETITIONER was denied the opportunity to contest the substance of the alleged secret evidence because he was not informed. Exhibit A and C

13

## IV PRAYER FOR RELIEF

WHEREFORE, PETITIONER respectfully prays that this court enter judgment granting PETITIONER:

62. A declaration that the acts and omissions described herein violated PETITIONER'S rights under the Constitution and laws of the United States.

63. A preliminary and permanent injunction ordering RESPONDENTS to expunge PETITIONER'S record of the offense and to restore lost good conduct time.

64. A trial by jury on all issues triable by jury.

65. Any additional relief this court deems just, proper, and equitable.

_____  
RAFIQ SABIR #55312-066  
Federal Correctional Institution, Loretto  
Post Office Box 1000  
Cresson, Pennsylvania 16630

25 July 2020  
DATE

### VERIFICATION

I have read the foregoing PETITION and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

_____  
RAFIQ SABIR

Executed at: FCI Loretto  
Post Office Box 1000  
Cresson, Pennsylvania 16630

Date: 25 July 2020

14